**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TIMOTHY CAMPBELL, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-26-2025 |
| W.R. GRACE & CO., | * | |
| *Defendant*. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Timothy Campbell ("Campbell" or "Plaintiff") brought this action against Defendant W.R. Grace & Co. ("W.R. Grace" or "Defendant") alleging violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. *See generally* (ECF No. 2). In his Amended Complaint (ECF No. 2), Plaintiff alleges that W.R. Grace interfered with the exercise of his FMLA rights (Count I) and retaliated against him for exercising his FMLA rights (Count II). (ECF No. 2 ¶¶ 33, 39). Presently pending before this Court is Defendant's Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 6; ECF No. 6-1) ("Defendant's Motion"). Plaintiff has responded in Opposition (ECF No. 9), and Defendant has filed a Reply (ECF No. 10). The parties' submissions have been reviewed, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 6) is GRANTED. Mr. Campbell's Amended Complaint (ECF No. 2) is DISMISSED WITHOUT PREJUDICE to the filing of a Second Amended Complaint within fifteen days of this Opinion, i.e., by December 2, 2026.

## BACKGROUND

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022) (quoting *Driver Opportunity Partners I, L.P. v. First United Corp.*, No. RDB-20-2575, 2021 WL 82864, at *1 (D. Md. Jan. 8, 2021)). Except where otherwise indicated, the following facts are derived from Plaintiff's Amended Complaint (ECF No. 2)[1] and accepted as true for purposes of ruling on Defendant's Motion (ECF No. 6).

Defendant W.R. Grace is a global leader in the production of specialty chemicals. (*Id.* ¶ 5). Mr. Campbell worked as a Lab Technician Specialist at W.R. Grace from 2014 until his termination on November 12, 2025. (ECF No. 2 ¶¶ 6, 19–24). Prior to his termination, Mr. Campbell asserts that he earned $70,000 per year and handled "inventory, logistics, and shipping[]" under Mr. Dan McGuire's supervision. (*Id.* ¶ 7).

On Thursday, September 25, 2025, at 2:49 a.m., Mr. Campbell notified Mr. McGuire via text message that his grandmother suffered a medical emergency and that he would "have to take a pto day or whatever the case." (*Id.* ¶¶ 8–9). Mr. Campbell's grandmother passed away later that same day. (*Id.* ¶ 11). Following her death, Mr. Campbell took five days off between September 29, 2025, and October 3, 2025. (*Id.* ¶¶ 11, 13). However, in a text message to Mr. McGuire on Sunday, October 5, 2025, Mr. Campbell requested to take off work for "a few more days" ("Additional Leave Request"). (*Id.* ¶ 14). Mr. Campbell stated that because he was

---

[1] Plaintiff's Amended Complaint appears on the docket at both (ECF No. 1-3) and (ECF No. 2). For clarity, this opinion will reference only (ECF No. 2) when citing Plaintiff's Amended Complaint.

resolving matters related to his grandmother's death during his five days off, including "handl[ing] the arrangements with [his] mother," "clean[ing] out part of the house and fix[ing] up and secur[ing] the house," and "handling business with the funeral home an [sic] [his grandmother's] estate[]," he had "barely . . . any time to actually grieve." (*Id.*). On October 7, 2025, two days after Mr. Campbell's Additional Leave Request, Mr. McGuire clarified that Mr. Campbell "would have to use up any pto [he had] before [he] could apply for unpaid fmla." (*Id.* ¶ 17). Mr. Campbell replied, citing concerns about his remaining PTO balance and that the "5 days [off] help[ed], but [was] definitely not enough . . . to get back to full capacity or close to it." (*Id.*). Still, Mr. Campbell returned to work the following day. (*Id.* ¶ 18).

On November 12, 2025, just over a month after Mr. Campbell's time off requests, Mr. McGuire held a meeting with Mr. Campbell and a member of Human Resources. (*Id.* ¶¶ 19–21). During this meeting, Mr. McGuire informed Mr. Campbell of his termination from W.R. Grace. (*Id.* ¶ 23). According to Mr. Campbell, W.R. Grace failed to provide any reason for his termination beyond that "he was in his car for 'extended periods of time.'" (*Id.* ¶ 24).

On February 15, 2026, Mr. Campbell filed a one-count Complaint in the Circuit Court for Howard County, Maryland, alleging a state law retaliation claim under the Maryland Flexible Leave Act, MD. CODE ANN., LAB. & EMPL. § 3-801 *et seq.* (ECF No. 1-2 ¶¶ 19–23). In the circuit court, W.R. Grace moved to dismiss on April 9, 2026, (ECF No. 1-11), and Mr. Campbell then filed a two-count Amended Complaint on April 24, 2026. *See* (ECF No. 2). In his Amended Complaint, Mr. Campbell alleged that W.R. Grace interfered with his rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and retaliated against him for exercising those rights. *See* (ECF No. 2 ¶¶ 25–40). On May 22, 2026,

W.R. Grace removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal question jurisdiction under 28 U.S.C. § 1331. *See* (ECF No. 1). W.R. Grace now moves to dismiss Mr. Campbell's Amended Complaint (ECF No. 2). *See* (ECF No. 6).

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive such a motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). However, it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. In other

words, the factual allegations in the complaint, taken as true, must "permit the court to infer more than the mere possibility of misconduct" by the defendant. *Id.* at 679.

## ANALYSIS

W.R. Grace moves for dismissal of Plaintiff's Amended Complaint (ECF No. 2) pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Mr. Campbell has failed to state plausible claims for relief under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* (ECF No. 6 ¶ 2). The Court addresses each claim in turn.

### I. Interference Claim (Count I)

Mr. Campbell alleges that W.R. Grace interfered with the exercise of his FMLA rights when it failed to designate his leave as FMLA-protected, required that he use his accrued paid-time-off ("PTO"), and discouraged him from taking additional leave. (ECF No. 2 ¶¶ 25–34). The FMLA prohibits covered employers from "interfere[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" under the FMLA. 29 U.S.C. § 2615(a)(1). An employer may interfere with the exercise of an employee's FMLA rights by improperly refusing FMLA leave or by discouraging a covered employee from using such leave. *Yampierre v. Baltimore Police Dep't*, No. ELH-21-1209, 2023 WL 6049489, at *42 (D. Md. Sep. 15, 2023) (quoting 29 C.F.R. § 825.220(b)). To establish a claim for FMLA interference, a plaintiff must plausibly allege that: "(1) he was an eligible employee; (2) his employer was covered by the statute; (3) he was entitled to leave under the FMLA; (4) he gave his employer adequate notice of his intention to take leave; and (5) the employer denied his FMLA benefits to which he was entitled." *Yampierre*, 2023 WL 6049489, at *42 (citation modified) (quoting *Carey v. Baltimore City Bd. of School Comm'rs*, GLR-22-2, 2022 WL 17254067, at *6 (D.

Md. Nov. 28, 2022)); *see also Sherif v. Univ. of Md. Med. Ctr.*, 127 F. Supp. 3d. 470, 477 (D. Md. 2015). This standard requires that Mr. Campbell plead facts plausibly suggesting that he was *actually entitled* to FMLA leave to survive dismissal. For the reasons described herein, he has not.

**A. Mr. Campbell failed to plausibly allege that his grandmother stood in loco parentis to him during his childhood.**

In relevant part, the FMLA entitles "an eligible employee . . . to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C); *see also* 29 C.F.R. § 825.201(a) ("An eligible employee is entitled to FMLA leave if needed to care for the employee's parent with a serious health condition."). Under the FMLA, "[t]he term 'parent' means the biological parent of an employee *or an individual who stood in loco parentis* to an employee when the employee was a son or daughter." 29 U.S.C. § 2611(7) (emphasis added). Individuals who stand "'in loco parentis' include "those with day-to-day responsibilities to care for and financially support a child, or, in the case of an employee, who had such responsibility for the employee *when the employee was a child*." 29 C.F.R. § 825.122(d)(3) (emphasis added).

Survival of Mr. Campbell's interference claim depends on whether he was entitled to leave under the FMLA to care for a qualifying family member. As noted above, Mr. Campbell sought leave to grieve and manage personal affairs following the death of his grandmother. *See* (ECF No. 2 ¶¶ 8–9, 11–14). However, "the plain language of the FMLA does not authorize FMLA leave for the care of grandparents." *Dillon v. Md. Nat'l Cap. Park and Plan. Comm'n*, 382

F. Supp. 2d 777, 785 (D. Md. 2005). Furthermore, as Judge Chasanow of this Court explained in *Dillon*:

> The mere fact of being a grandparent does not necessarily give rise to in loco parentis status. Indeed, a grandparent may assume the care and custody of a grandchild under circumstances which are consistent with the existence of the natural relationship between parent and child without any intention to sever that relationship.

382 F. Supp. 2d at 787 (internal citations omitted).

In *Dillon*, Judge Chasanow denied the defendant's motion for summary judgment, finding that the plaintiff proffered sufficient evidence to create a genuine dispute as to whether her grandmother stood in loco parentis to her during childhood. 382 F. Supp. 2d at 787–88. The plaintiff not only informed her employer that she needed to take leave to find housing for her ill grandmother who "actually raised [her]," "fed [her,]" and "slept with her," but she also pleaded "that her grandmother was the person that raised her for substantial periods of time."[2] *Id.* at 780, 782; *see also* Complaint ¶ 11, *Dillon v. Md. Nat'l Cap. Park and Plan. Comm'n*, 382 F. Supp. 2d 777 (D. Md. 2005) (No. 8:04-cv-00994-WGC). As in *Dillon*, Mr. Campbell must

---

[2] As demonstrated in *Dillon*, complaints that plausibly plead in loco parentis relationships generally assert specific facts regarding the "parent's" involvement in the plaintiff's childhood. *See, e.g.*, *Coutard v. Mun. Credit Union*, 848 F.3d 102, 113 (2d Cir. 2017); *Verby v. PayPal, Inc.*, No. 8:13-CV-51, 2014 WL 1689684, at *14 (D. Neb. 2014). In *Coutard*, the plaintiff alleged in his complaint that his "grandfather [was] considered a 'parent' or qualifying person under the FMLA because [his] grandfather raised him . . . and . . . functioned as a parent . . . when [he] was a child." Complaint ¶ 24, *Coutard v. Mun. Credit Union*, 848 F.3d 102 (2d Cir. 2017) (No. 15-1113). Though the district court initially granted the defendant's motion for summary judgment, the Second Circuit reversed and remanded for further proceedings. *Id.* at 114–15. Mr. Campbell's standalone assertion that his "grandmother acted as *in loco parentis*," (ECF No. 2 ¶ 10), is threadbare compared to the *Coutard* plaintiff's description of his grandfather's involvement in his childhood. Conversely, in *Verby*, the district court granted the defendant's motion for summary judgment on an FMLA interference claim, finding "plaintiff was not entitled to an FMLA benefit because the reason she sought and took leave—the care of her ailing grandmother—[was] not protected by the FMLA." Like Mr. Campbell's Amended Complaint here, (ECF No. 2), the *Verby* plaintiff's complaint made a mere conclusory statement that her grandmother was "beloved" but was otherwise devoid of facts plausibly suggesting her grandmother stood in loco parentis. Complaint ¶ 33, *Verby v. PayPal, Inc.*, No. 8:13-CV-51, 2014 WL 1689684, at *14 (D. Neb. 2014).

plausibly allege that his grandmother stood in loco parentis to him during his childhood to establish his entitlement to FMLA leave.[3]

Here, Mr. Campbell's representations about his relationship with his grandmother to W.R. Grace and in his Amended Complaint are insufficient to demonstrate that she stood in loco parentis to him during childhood, a necessary predicate for stating an FMLA interference claim. In Mr. Campbell's October 5, 2025, text message to his supervisor, Mr. McGuire, he asserted that he had to "handle the arrangements with [his] mother," "clean out part of the house and fix up and secure the house," and "handl[e] business with the funeral home an [sic] [his grandmother's] estate[]." (ECF No. 2 ¶ 14). Mr. Campbell further stated that his grandmother's death had "uprooted everything" and that "a-lot [sic] of the heavy lifting now obviously [fell] on [him]." (*Id.*). In stark contrast to the *Dillon* plaintiff, who informed her employer that her grandmother "actually raised [her]," "fed [her,]" and "slept with her," 382 F. Supp. 2d at 780, 782, here, Mr. Campbell did not address the nature of his relationship with his grandmother in his text messages with Mr. McGuire. *See* (*Id.* ¶¶ 9, 14, 17).

Additionally, Mr. Campbell's Amended Complaint only addresses the nature of his relationship with his grandmother in three statements: (1) "Campbell's grandmother acted as *in loco parentis*;" (2) "he was still handling matters related to his '*parents*' medical emergency;" (3)

---

[3] According to the Department of Labor's website, an employer may, but is not required to, request reasonable documentation of a qualifying family relationship before approving an employee's request for FMLA leave. *See Fact Sheet #28B: Using FMLA Leave When You are in the Role of a Parent to a Child*, U.S. DEP'T OF LAB. (March 2025), https://www.dol.gov/agencies/whd/fact-sheets/28B-fmla-in-loco-parentis. In analyzing the sufficiency of Mr. Campbell's Amended Complaint (ECF No. 2), the Court proceeds under the assumption that W.R. Grace did not request supporting documentation at the time Mr. Campbell made his request for leave. Accordingly, the Court will consider both the information provided directly to W.R. Grace, and any supplemental information in Mr. Campbell's Amended Complaint (ECF No. 2), to determine whether Mr. Campbell's grandmother stood in loco parentis to him and was therefore a qualifying family member.

"[b]y requesting leave . . . in connection with his *parent's* serious health condition . . . ." (*Id.* ¶¶ 10, 14, 16) (emphasis added). Even viewed in the light most favorable to Mr. Campbell, these assertions constitute "[t]hreadbare recitals of the elements of [the] cause of action" that do not suffice to establish his grandmother stood in loco parentis to him during childhood. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Mr. Campbell suggests that his text messages with Mr. McGuire demonstrate "an extremely close relationship" and thus are sufficient to plausibly allege that his grandmother falls within the FMLA's definition of parent, (ECF No. 9 at 5–6), Defendant correctly notes that "Plaintiff's reliance on his role in settling his grandmother's estate" does not speak to whether she stood in loco parentis to him during *childhood*. (ECF No. 10 at 4).

Mr. Campbell instead was required to plead facts plausibly suggesting that his grandmother assumed the "day-to-day responsibilities to care for and financially support . . . [him] when [he] *was a child*." 29 C.F.R. § 825.122(d)(3) (emphasis added). However, neither Plaintiff's Amended Complaint (ECF No. 2), nor his initial text messages to his employer, provide facts addressing his grandmother's involvement in or responsibilities during his childhood. *See* (ECF No. 2); *see also* Complaint ¶ 11, *Dillon v. Md. Nat'l Cap. Park and Plan. Comm'n*, 382 F. Supp. 2d 777 (D. Md. 2005) (No. WGC-04-0994). Although the Court acknowledges the distress Mr. Campbell experienced following his grandmother's death, Mr. Campbell's Amended Complaint (ECF No. 2) is unfortunately devoid of any information from which the Court could infer that his grandmother "put [herself] in the situation of a lawful parent by assuming the obligations incident to the parental relation." *Dillon*, 382 F. Supp. 2d at 786 (quoting *Niewiadomski v. United States*, 159 F.2d 683, 686 (6th Cir. 1947)); *see also Chapman*

*v. Brentlinger Enters.*, 124 F.4th 382, 396 (6th Cir. 2024). As Mr. Campbell's conclusory statements that his grandmother stood in loco parentis to him are insufficient to plausibly allege that "he was entitled to leave under the FMLA," his interference claim necessarily fails. *Yampierre*, 2023 WL 6049489, at *42.

**B. Plaintiff failed to plead facts plausibly supporting other necessary elements of an FMLA interference claim.**

**1. Bereavement is not a qualifying purpose for FMLA leave.**

Even assuming that Mr. Campbell asserted facts plausibly suggesting his grandmother stood in loco parentis to him during childhood, his interference claim would still fail because grief is not a qualifying reason for FMLA leave. *See* 29 U.S.C. § 2612(a)(1)(C); 29 C.F.R. § 825.112(a)(3). The FMLA provides eligible employees up to twelve workweeks of leave in a twelve-month period "to care for . . . [a] parent [who] has a serious health condition." 29 U.S.C. § 2612(a)(1)(C); *see also* 29 C.F.R. § 825.112(a)(3) (providing that "[e]mployers covered by FMLA are required to grant leave to eligible employees . . . [t]o care for . . . [a] parent with a serious health condition"). A "'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves— (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Although it appears that neither this Court nor the Fourth Circuit have addressed the question, courts in other jurisdictions have agreed that bereavement is not a qualifying circumstance under the FMLA because the phrase "a serious health condition" contemplates only "medical conditions affecting the living." *Lange v. Showbiz Pizza Time, Inc.*,

12 F. Supp. 2d 1150, 1154 (D. Kan. 1998) (internal quotation marks omitted) (quoting *Brown v. J.C. Penney Corp.*, 924 F. Supp. 1158, 1162 (S.D. Fla. 1996)).[4]

Here, Mr. Campbell's communications to his employer demonstrate that he did not request leave to care for a family member with a serious health condition. Though Mr. Campbell states that his grandmother was in the hospital following her medical emergency and until her death later that day, Mr. Campbell does not allege that his request for time off during this timeframe was denied. (ECF No. 2 ¶¶ 8, 9, 14, 15). Instead, Mr. Campbell takes issue with the denial of his Additional Leave Request, which was made ten days after his grandmother's passing and after he had already taken five days off. (ECF No. 2 ¶¶ 13, 14, 15).

In his October 5, 2025, text message to his supervisor, Mr. McGuire, Mr. Campbell asserted that he "need[ed] a few more days" because he "barely [] had any time to actually grieve" while he was arranging his late grandmothers' affairs. (ECF No. 2 ¶¶ 14, 15). As context for his Additional Leave Request, Mr. Campbell added that he read on "the bereavement page"[5] that employees could "use non paid leave as well" if they "needed more time specifically from a parent's death." (ECF No. 2 ¶ 14). By tying his requests for leave

---

[4] *See also Conde v. NYS Dep't of Motor Vehicles*, No. 25-CV-8484 (LLS), 2026 WL 621688, at *3 (S.D.N.Y. March 2, 2026) ("Plaintiff claims the days of her unexcused absences were used for bereavement leave, which is not one of the covered purposes under the FMLA."); *Diaz v. Robert L. Lipton, Inc.*, No. 0:24-cv-61577-LEIBOWITZ/AUGUSTIN-BIRCH, 2025 WL 3689522 (S.D. Fla. Jan. 8, 2025) (stating the FMLA "does not provide protections for employees to grieve with their family of the loss of a relative or to be by their relative's side at the time of passing"); *Dela Cruz v. Brennan*, No. 19-cv-01140-DMR, 2021 WL 23295, at *5 (N.D. Cal. Jan. 4, 2021) ("[N]umerous courts have held that 'bereavement leave or absence from work following the death of a family member is not protected under the FMLA.'" (quoting *Lacayo v. Donahoe*, No. 14–cv–04077–JSC, 2015 WL 3866070 (N.D. Cal. June 22, 2015))); *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 66 n.13 (D.D.C. 2011) ("The FMLA does not cover bereavement leave."); *Beal v. Rubbermaid Com. Prods.*, 972 F. Supp. 1216, 1226 (S.D. Iowa 1997) ("Leave is not meant to be used for bereavement because a deceased person has no basic medical, nutritional, or psychological needs which need to be 'cared for.'").

[5] It is unclear to the Court whether Mr. Campbell is referencing a webpage or PDF created by his former employer, or if he is referencing an authoritative source on the FMLA generated by the Department of Labor. The Court assumes the former given that, as explained here, the FMLA does not cover bereavement.

directly to his grandmother's passing and need for time to grieve, Mr. Campbell has sufficiently demonstrated that his Additional Leave Request was for bereavement rather than "to care for . . . [a] parent [who] has a serious health condition[.]" U.S.C. § 2612(a)(1)(C). Thus, Mr. Campbell has failed to establish that the purpose of his Additional Leave Request constituted a qualifying reason for FMLA leave. (ECF No. 2 ¶ 14).

**2. Plaintiff failed to plead that he was an FMLA-eligible employee.**

In addition to the deficiencies identified above, Mr. Campbell's Amended Complaint also does not contain sufficient information to plausibly demonstrate that he was an FMLA eligible employee. *See generally* (ECF No. 2). Under the FMLA, "[t]he term 'eligible employee' means an employee who has been employed— (i) for at least 12 months by the employer with respect to whom leave is requested . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). A plaintiff must plead facts sufficiently supporting both prongs to establish an FMLA interference claim. *See Scott v. Walmart Inc.*, No. LKG-23-02228 2025 WL 359059, at *10 (D. Md. 2025) (dismissing FMLA interference and retaliation claims where the plaintiff failed "to show that he worked more than 1,250 hours" in the year prior to his termination, despite alleging facts sufficient to demonstrate that he worked for his employer for more than twelve months); *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 659 (D. Md. 2013) (dismissing FMLA interference and retaliation claims where plaintiff failed to plausibly allege that he satisfied the 1,250–hours–worked requirement).

In his Amended Complaint, Mr. Campbell asserts that he "was a long tenured employee" and "paid approximately $70,000.00 per year." (ECF No. 2 ¶¶ 6, 7). Taken together,

these allegations plausibly suggest that Mr. Campbell worked for Defendant for at least twelve months and thus are sufficient to meet the first eligibility prong. However, as in *Greene*, "the Amended Complaint does not state explicitly that [Mr. Campbell] worked the requisite number of hours necessary to be an eligible employee." *Greene*, 987 F. Supp. 3d at 650; *see generally* (ECF No. 2). While Mr. Campbell asserted for the first time in his Opposition that he was "a full-time, salaried employee," he did not specify the number of hours he worked in his final year. (ECF No. 9 at 4). Given this Court's dispositions in *Scott* and *Greene*, Mr. Campbell's failure to allege that he worked the requisite 1,250 hours compels the conclusion that he has not sufficiently demonstrated his FMLA eligibility under 29 U.S.C. § 2611(2)(A).[6]

## II. Retaliation Claim (Count II)

Mr. Campbell also alleges that W.R. Grace retaliated against him for exercising his FMLA rights by terminating him shortly after he requested FMLA leave. (ECF No. 2 ¶¶ 35–40). "[T]he FMLA prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any individual for' exercising their FMLA rights." *Adkins v. CSX Trans.*, 70 F.4th 785, 792 (4th Cir. 2023) (alterations in original) (quoting 29 U.S.C. § 2615(a)(2)). To establish a prima facie FMLA retaliation claim, a plaintiff "must show (1) that he engaged in a protected activity, (2) that his employer took an adverse action against him, and (3) that there is a causal connection between the protected activity and the adverse action." *Lloyd v. Baltimore Police Dep't*, No. JMC-23-1987, 2026 WL 1983139, at *14 (D. Md. July 9, 2026)

[6] Defendant highlights other potential deficiencies in Mr. Campbell's Amended Complaint, including that: (1) Mr. Campbell failed to plead whether Defendant is an eligible employer under the FMLA; (2) Mr. Campbell did not provide reasonable notice of his intention to take FMLA leave; and (3) Mr. Campbell received the leave he requested and never suffered any harm. (ECF No. 6-1 at 5–6, 8, 10). Given that Mr. Campbell's claim fails on other grounds, the Court declines to address Defendant's remaining challenges.

(citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006)); *see also Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016).

As a threshold matter, Mr. Campbell must plausibly allege that he was engaged in FMLA-protected activity to state a retaliation claim. To determine whether a plaintiff engaged in FMLA-protected activity, this Court considers the first four elements of an interference claim: "(1) [whether] he was an eligible employee; (2) [whether] his employer was covered by the statute; (3) [whether] he was entitled to leave under the FMLA; and (4) [whether] he gave his employer adequate notice of his intention to take leave." *Sherif v. Univ. of Md. Med. Ctr.*, 127 F. Supp. 3d. 470, 481 (D. Md. 2015) (Chasanow, J.) (citation modified) (quoting *Edusei v. Adventist Healthcare, Inc.*, No. DKC-13-0157, 2014 WL 3345051, at *10 (D. Md. 2014)). Thus, similar to the FMLA interference context, whether Mr. Campbell engaged in FMLA-protected activity depends on whether he was actually entitled to take FMLA leave.

Although the Fourth Circuit has not yet addressed the issue, Judge Gallagher of this Court recently surveyed authority from other jurisdictions and found "more persuasive the line of cases holding that an employee who is not eligible for FMLA benefits cannot establish that he engaged in FMLA-protected activity." *Johnson v. Prime Source Bldg. Pro*, No. SAG-26-00859, 2026 WL 2675894, at *4 (D. Md. 2026) (collecting cases); *see also Sherif*, 127 F. Supp. 3d at 481–82 (Chasanow, J.) (noting that the Third, Sixth, Seventh and Eleventh Circuits hold that an FMLA retaliation claim fails as a matter of law where the employee was not entitled to FMLA-qualifying leave).

This Court joins Judge Gallagher and the Circuits that have addressed the issue in concluding that eligibility for FMLA-qualifying leave is a prerequisite to stating a valid

retaliation claim. As explained at length above, Mr. Campbell has failed to plausibly allege that he was an FMLA eligible employee or that he was entitled to FMLA leave to care for a qualifying family member. *See generally* (ECF No. 2). As Mr. Campbell could not be subject to retaliation for exercising FMLA rights he did not have, his retaliation claim also necessarily fails. *See Johnson*, 2026 WL 2675894 (dismissing plaintiff's FMLA retaliation claim where plaintiff failed "to plead facts demonstrating his FMLA eligibility"); *Scott v. Walmart Inc.*, No. LKG-23-02228 2025 WL 359059, at *10 (D. Md. 2025) (dismissing plaintiff's FMLA retaliation claim where plaintiff failed to allege that he worked more than 1,250 hours in the year prior to his termination); *Blake v. Alstom Transp., Inc.*, No. CPO-20-13603, 2022 WL 17250561, at *4 (D.N.J. 2022) (granting defendant's motion for summary judgment on an FMLA retaliation claim where plaintiff failed to establish his entitlement to FMLA leave, in part because his grandmother was not a qualifying individual, nor was she suffering from a serious health condition)..[7]

[7] As Mr. Campbell's retaliation claim fails at the threshold, the Court does not reach the sufficiency of his allegations concerning Defendant's alleged retaliation or the causal link between his Additional Leave Request and his termination. (ECF No. 2 ¶¶ 14, 23).

## CONCLUSION

For the reasons stated above, W.R. Grace's Motion to Dismiss the Amended Complaint (ECF No. 6) is GRANTED. Mr. Campbell's Amended Complaint (ECF No. 2) is initially DISMISSED WITHOUT PREJUDICE. If Mr. Campbell possesses facts to cure the manifest deficiencies identified in this Memorandum Opinion, he may file a Second Amended Complaint within fifteen days of this Opinion, i.e., by December 2, 2026. If a Second Amended Complaint is not filed by December 2, 2026, the Clerk of this Court is instructed to CLOSE this case with a DISMISSAL WITH PREJUDICE.

A separate Order follows.

Date: November 17, 2026

/s/

Richard D. Bennett
United States Senior District Judge